TREVA MARIE BRADLEY SMITH

*v.*

KENNETH CLEVELAND SMITH

(No. 10255)

Submitted April 19, 1950. Decided May 31, 1950.

LOVINS, JUDGE, not participating.

*H. D. Rollins,* for appellant.

*E. Franklin Pauley* and *Larry W. Andrews,* for appellee.

GIVEN, JUDGE:

This suit for divorce was instituted by the wife, Treva

Marie Bradley Smith, in the Court of Common Pleas of Kanawha County. The bill alleges cruelty on the part of the husband, Kenneth Cleveland Smith. The defendant answered, denying the allegations of cruelty and, by way of affirmative relief, sought a divorce from plaintiff on the ground of adultery. Much evidence was produced by the parties, some of which tended to sustain the allegations of the bill and some of which tended to sustain the allegations of the answer for affirmative relief. The court, believing both parties at fault, and not in equity with clean hands, denied a divorce to either, awarded custody of the two minor children to plaintiff, directed the defendant to pay to plaintiff a certain sum for support and maintenance of the children, impounded certain funds of defendant, and directed that the funds impounded be held as security for the payment of the support and maintenance so ordered. The Circuit Court of Kanawha County, by order of September 12, 1949, denied the defendant an appeal from the final decree of the court of common pleas, and this Court granted an appeal from that order, limiting the appeal, however, to the matter of the impounding of the funds. This makes it unnecessary to state the evidence in detail except as it may relate to the one question.

The parties were married in December, 1933, and separated in November, 1946. At the time of the taking of depositions the plaintiff was thirty-five years of age and the defendant was forty-seven years of age. They were the parents of two children, a boy born April 19, 1937, and a girl born May 3, 1946. The defendant was employed as a salesman but his net earnings were not clearly established. His gross earnings were estimated as high as $15,000.00 for some years, but he contends that his average gross income would be much less and that his net income would be still considerably less because of travel and other operational expenses. The plaintiff had no separate income but contends that she assisted the defendant in his business by keeping books, taking care of correspondence and similar work, all in the home, and that this work required two or three hours of time each day for about four days each week. The defendant denies this but

admits she did some such work as filing duplicate statements, which required not more than twenty minutes each day.

In 1935 the parties purchased a home on Beech Avenue in Charleston, paying therefor the sum of $3,400.00. She testifies that she received $2,500.00 for an injury received from an automobile accident and that $2,000.00 of that sum was applied to the purchase price of this property and that "he paid the rest". In 1941 they purchased and moved to a property on Florence Drive in Charleston, and thereafter occupied the same as a home until the time of the separation. The dwelling thereon consisted of seven rooms and two baths, but was at the time of purchase unfinished. The purchase price of this property was $8,700.00, of which approximately $2,700.00 was paid in cash and the balance was represented by an assumed loan secured by a trust deed lien against the property. Later the Beech Avenue property was sold for $7,750.00, of which $6,000.00 was applied to the discharge of the loan so assumed and "the rest was put in bonds". Title to both of these properties was taken in the name of the wife. Apparently she now claims title to the Florence Drive property, but he says that the reason he put the property in her name was "* * * Well, I travel and wanted to keep her protected so that if anything ever happened to me, she wouldn't have any trouble about it, and also if I had any business dealings that I would lose—she would still be able to have a home—her and Sonny." After the purchase of the Florence Drive home over six thousand dollars was spent in finishing and improving the dwelling thereon and it was, at the time of the separation, completely furnished. The wife claims the furniture as her own property. The value of the Florence Drive property at the time of the separation was estimated to be approximately $18,000.00. It was then free from liens and apparently the furniture therein was paid for. In addition to the home property the parties owned jointly a small parcel of land on Elk River, called camp property, which cost $950.00 and, at the time of the separation, was estimated to be worth approximately $1,200.00.

The defendant carried $15,000.00 of life insurance and his son was named beneficiary in the policies. He owned an automobile and stocks of various corporations, the face value of which was approximately $2,500.00. In addition to the above the defendant had purchased certain government bonds and the wife was named in the bonds as "beneficiary". The value of such bonds is not clearly indicated. She testified that at one time the maturity value of the bonds was as much as $22,000.00. The defendant testified to the effect that the maturity value thereof was approximately $16,000.00 and that the cash value was approximately $12,000.00. Some of the bonds were cashed from time to time to pay taxes, insurance premiums and costs incurred in connection with this litigation. Later the defendant cashed the balance of the bonds, received therefor the sum of $7,684.50, and obtained a cashier's check for that amount, payable to himself.

On January 9, 1947, the trial court entered a decree directing the defendant to pay the plaintiff the sum of $300.00 per month, $175.00 being for temporary alimony and $125.00 for support and maintenance of the two children during the pendency of this suit. By decree of October 30, 1948, the trial court reduced the amount of such payments to $200.00 per month. The final decree, which awarded custody of the two children to the plaintiff, directed defendant to pay to the plaintiff the monthly sum of $125.00 for the support and maintenance of the children. The final decree allowed no sum to plaintiff for her support.

On October 24, 1948, the defendant apparently having failed to make payments in accordance with the decrees mentioned above, the trial court decreed that the defendant deliver to the receiver of the court the cashier's check for $7,684.50 and that the receiver hold the check until the further order of the court. By decree of November 22, 1948, the defendant having failed to deliver the check in accordance with the decree of the court, the court decreed that the body of the defendant be attached and brought before the court. The attachment apparently was not

served. However, on January 11, 1949, the defendant appeared in court, made tender of the check to the court and moved the court to modify the previous order by permitting the check to be delivered to the clerk of the court instead of to the receiver, which motion was sustained and the clerk directed to hold the check until the further order of the court.

The final decree directed defendant to indorse the check to the order of the clerk and directed the clerk to pay out of the funds represented by the check the sum of $1,184.50, of which sum $206.75 was paid to the reporter, $300.00 to the special commissioner in chancery, $200.00 to the attorneys for the plaintiff and $477.75 to the plaintiff to be applied toward the payment of unpaid monthly installments of alimony. The court then decreed that the balance of $6,500.00 be paid to the general receiver of the court and that the same "be held by said receiver as a guarantee for the payment of the sums herein directed to be paid by the defendant to the plaintiff for the support, maintenance and care of the infant children of the plaintiff and defendant, until the further order of the court." The decree contains no provision relating to the application of said sum, or any part thereof, for the support and maintenance of the children. The final decree enjoined the defendant from interfering with the possession, use and occupancy by the plaintiff of the "property at 810 Florence Drive now occupied by her, or the personal property and effects thereon, * * *".

There appears nothing in the record of this suit, in our opinion, to indicate that the defendant has at any time tried to escape his responsibility to furnish support and maintenance for his two children, unless his failure to make the payments as decreed by the court be so construed. Apparently the trial court was of the opinion that there was no such attempt to escape such responsibility, since the rule in contempt was discharged without hearing thereon. As is usual in this type of controversy, the feelings between the parties were very bitter and uncompromising and, assuming that there was probably wil-

ful refusal to pay, it seems more likely that such refusal was because of this feeling rather than an attempt to escape the duty of supporting the children. Except as to the matters charged in the pleadings, the parties appear to have led respectable lives, have been industrious, frugal, and their savings have been considerable. The defendant, though contending some physical disability, continues to work at the same business in which he was previously engaged. He had made no effort to escape the jurisdiction of the court and there seems to be no reason to believe that he has any intention of trying to avoid compliance with the decree requiring payment for the support of the children.

The defendant contends that the lower court was without jurisdiction or power to impound the sum represented by the cashier's check and that if the court had such jurisdiction or power it abused its discretion, in view of all the circumstances shown in this proceeding. The plaintiff relies upon Code, 48-2-15, as amended, as giving the court jurisdiction and power, and denies any abuse of discretion. The section of the Code relied upon, in so far as applicable here, reads: "* * * In any case where the divorce or the annulment is denied, if the parties are living separate and apart from each other, the court shall retain jurisdiction of the case for the purpose * * * of making such order or decree concerning the care, custody, education and maintenance of the minor children * * * and such order or decree may, * * * be revised or altered, and a new order or decree made, as the circumstances of the parties or the needs of the children may require. For the purpose of making effective any order or decree provided for in this section the court may make any order or decree concerning the estate of the parties, or either of them, as it shall deem expedient."

Proceedings for divorce in this State are purely statutory. 6 Michie's Jurisprudence, Virginia and West Virginia, Divorce and Alimony, Section 3; *Boger* v. *Boger,* 86 W. Va. 590, 104 S. E. 40. Code, 48-2-6, places suits for divorce "on the chancery side" of the circuit courts and,

while other sections of the Code deal with the duty of a father as to the support of his minor children and make such duty a personal obligation of the father, it is not contended that any other statute authorizes the courts to enter decrees impounding property to secure the performance of such obligations or to secure the compliance with orders or decrees relating to such obligations. If such jurisdiction exists it is by virtue of the part of the section quoted above, especially the last sentence thereof. No case in this State has been called to our attention, and we find none, wherein consideration is given the question presented. In *Goff* v. *Goff,* 60 W. Va. 9, 53 S. E. 769, the Court held that a decree for alimony constituted a lien upon land of the husband, but that conclusion was reached because of the provisions of a statute which provided that "every judgment for money rendered in this State heretofore or hereafter against a person shall be a lien on all real estate of or to which such person shall be entitled at or after the date of the judgment." Obviously that statute has no application here. In *Ring* v. *Ring,* 185 Va. 269, 38 S. E. 2d 471, 165 A. L. R. 1237, the Court had before it a statute which, in so far as pertinent, reads: "* * * upon decreeing a divorce * * * the court may make such further decree as it shall deem expedient concerning the estate and the maintenance of the parties, or either of them, and the care, custody and maintenance of their minor children * * *." In deciding the point the Court stated:

> " 'The jurisdiction of divorce causes is purely statutory (2 Bish. Mar. Div. & Sep., §1231), and the court possesses no powers in such cases involving matters of property beyond those conferred by statute, with the exception of awarding alimony, which is an incident of divorce, and based upon the doctrine of the husband's duty to maintain and support his wife.'
>
> "This doctrine was re-affirmed in an opinion by Mr. Justice Spratley in Golderos v. Golderos, 169 Va. 469, 502, 194 S. E. 706.
>
> "Since this court had held that a court of equity has no power to transfer to the wife title to a specific portion of the husband's real estate, by

the same token we must hold that the trial court, because of its lack of equity jurisdiction, had no power to impound the stock of appellant."

The language contained in the last sentence of Code, 48-2-15, is very broad, empowering the court to "make any order or decree concerning the estate of the parties" which may be deemed expedient for the "purpose of making effectual any order or decree provided for" in that section. That section expressly empowers the court to make and enter orders and decrees requiring support and maintenance of minor children. The purpose for which the order or decree may be entered is clearly stated, and the only limitation placed on the power to make the order or decree seems to be that it must be by the court found to be expedient. It seems clear, therefore, and we so hold, that the intention of the provision is to grant to courts having jurisdiction of the matters dealt with in the section, power to make such a decree as is here involved. We further hold, however, that the power so granted is a discretionary one, and subject to review by this Court. See 27 C. J. S., Judicial Discretion, page 135.

As previously stated, the wife was given exclusive use and possession of the home place on Florence Drive, valued at approximately $18,000.00, and the personal property therein. This property and the $6,500.00 impounded constituted practically all of the savings of the parties at the time of the entry of the final decree. The defendant had little or no income other than his earnings. He had borrowed and still owed the sum of $5,500.00, the payment of which was secured by the pledge of his life insurance policies as collateral. He had indicated or shown no intention or disposition to avoid the personal responsibility of support and maintenance of his two children and appears to have provided well for them before the institution of this suit. The title to the home place was in the name of the wife and would constitute ample security for the support and maintenance decreed the minor children, if not the property of the wife. If the property of the wife, it came to her, in large part, through his earnings. Contempt

and other legal remedies would be available should defendant undertake to avoid compliance with the decree. The impounding of personal property, depriving the owner of the use or advantage thereof, especially when constituting all or the larger part of the property owned, appears harsh and probably uncalled for, except in extreme cases. We are of the opinion that no such extreme case exists here and that the trial court abused its discretion in requiring the defendant to deposit with the receiver of the court the sum of $6,500.00 with the receiver, and this suit remanded for the purpose of requiring that the sum of $6,500.00 impounded be refunded to the defendant.

*Reversed and remanded.*