RAINWATER *v.* RAINWATER.

No. 41099          April 6, 1959          110 So. 2d 608

*Wm. S. Murphy,* Lucedale, for appellant.

*Charles K. Pringle*, Biloxi, for appellee.

ON CROSS-APPEAL.

APPELLANT IN REPLY.

LEE, J.

Mrs. Pennie Dandelake Rainwater, on her bill of complaint in the Chancery Court of Harrison County against Homer T. Rainwater, her husband, in which cause the defendant entered his appearances, was, by decree of date of March 18, 1943, awarded temporary maintenance with support fixed at $100 per month. Thereafter, on the defendant's answer and cross-bill, charging habitual, cruel and inhuman treatment, Rainwater was, by decree of date of June 1, 1943, awarded a divorce, but his wife's support was continued in the amount originally decreed.

Subsequently, on June 3, 1944, on Rainwater's petition, the support payments were reduced to $65 per month; and thereafter by decree of date of February 17, 1945, monthly payments at that rate were required until the further order of the court.

Rainwater again on August 14, 1945 filed a petition for reduction in the amount of payments; but after Mrs. Rainwater filed an answer thereto and asked for judgment for the amount in arrears, he moved for a dismissal of his petition without prejudice, and, on February 13, 1946, the motion was sustained.

Nothing further transpired in this cause until October 28, 1950 when Mrs. Rainwater filed her petition, alleging that her former husband had made no payments to her for the years 1946 to 1949 and for ten months of 1950, inclusive, and prayed that he be adjudged in contempt. The defendant answered, and, by his cross-bill, prayed that he should be purged of any previous contempt and that no further assessments for separate maintenance should be awarded. The cause was partially heard at that time and was continued for further hearing in vacation, but the same was not heard further and no decree was ever entered.

Mrs. Rainwater, on February 19, 1953, filed another petition to have the defendant cited for contempt; and on August 26, 1953, she moved for a decree based on the partial hearing which had been conducted on November 8, 1950; but no action was taken thereon.

Again on October 11, 1956 Mrs. Rainwater filed a petition, alleging that no payments had been made to her for the years 1946 through 1955 inclusive and ten months of 1956, and prayed for judgment thereon and that her former husband should be held in contempt. Rainwater, on November 21, 1956 filed a motion to dismiss the last named petition of his former wife. Considerable evidence was taken thereon, and the motion was overruled. Mrs. Rainwater's 1950 petition to have her former husband cited for contempt was then amended to show that there had been no payments for the years 1946 to 1955 inclusive and for ten months of 1956.

At the hearing on the merits, Mrs. Rainwater testified that she and the defendant were married on August

10, 1931; that they were divorced in 1943; and that the last payment of alimony to her was made in November 1945. She was then 46 years of age, was not trained for any special work, and her earning capacity was very small. Besides she had been, and then was, in bad health and largely dependent on her family and friends.

Rainwater testified that he had a B. S. Degree from Mississippi State University, a Master's Degree from Indiana University, had done work on a Ph. D. at the University of California, and had done special study at Mississippi Southern College, the University of Mississippi, and Louisiana State University. When he obtained the divorce, he was an entomologist in the employ of the U. S. Department of Agriculture, receiving a salary of $5,000 per year. However shortly after obtaining the divorce, he suffered the rupture of a blood vessel in one of his eyes, became totally disabled, and was forced to retire from his employment. In the meantime, he had married again and moved to California, where, for three years, he worked as a common laborer in the Kaiser Steel Mills. His second wife, who had about $8,000 when they were married, died, and after the payment of expenses, he relinquished his interest in the remaining $4,000 in favor of their daughter, Caroline, and set up a trust fund for her education. After his disability, he had made no payments to his first wife. He married a third time; and in 1950 got a position in Mississippi as a teacher, and has continued in that occupation ever since. For the first several years his salary was $1,600 per session; and in 1953, it was raised to $1,800, and for 1954 and 1955, it was $2,600. His pension, on retirement, was $60 per month, but from time to time it was increased, and for the last several years, it has been $93 per month. His present wife also teaches and has been receiving a salary of $178 per month. He estimated his expenses for groceries, gas, utilities, upkeep of the home, laundry and pressing, clothing, expenses of his

car, tithing, and miscellaneous expenses. In one itemization thereof he admitted that he had a balance of receipts over expenditures of approximately $58 per month. George Rainwater, a brother, testified that Homer has a very moderate living; that he is not capable of following an occupation other than teaching; that he was able to secure that work because of the scarcity of teachers; and that his wife assisted him in reading, grading papers, and in driving the car.

The chancellor, in his written opinion, held that, pursuant to the terms of the decree of February 17, 1945, Mrs. Rainwater had acquired a vested right to the payments thereby awarded to her; that Rainwater had made no payments whatever to her since the filing of her petition on October 28, 1950; that, from that date until the final hearing, at times he could have paid fairly substantial amounts on such installments, and that, after paying his expenses, he had had about $58 per month left; and that he did not show reasonable diligence in seeking a further reduction in the payments although the doors of the chancery court were open at all times. He therefore adjudged Rainwater to be guilty of civil contempt, and granted a decree and judgment against him for $4,940, being $65 per month from October 28, 1950 until February 4, 1957, together with interest of $926.25 thereon at the rate of 6 per cent per annum; and required the posting and approval of bond in the sum of $1,000 to insure compliance with the decree of February 17, 1945. From the decree entered, Rainwater appealed.

██ █ It is settled beyond question by the decisions of this Court that, after alimony has accrued, there is a vested right thereto, and that interest is allowed thereon. Guess v. Smith, 100 Miss. 457, 56 So. 166; Schaffer v. Schaffer, 209 Miss. 220, 46 So. 2d 443; Gibson v. Clark, 216 Miss. 430, 62 So. 2d 585. ██ Besides, a court cannot give relief from civil liability for any payments

that have already accrued. Lewis v. Lewis, 213 Miss. 434, 57 So. 2d 163.

The failure of the husband to comply with the decree providing for payment of alimony is prima facie evidence of contempt. Ramsay v. Ramsay, 125 Miss. 185, 87 So. 491, 14 A. L. R. 712, Lewis v. Lewis, supra.

If a defendant is in fact unable to comply with the terms of the alimony decree, he should, with reasonable promptitude, make the fact known to the court by proper petition and have the decree modified or suspended. Redding v. Redding, 167 Miss. 780, 150 So. 776; Lewis v. Lewis, supra. If he fails to seek a modification or suspension prior to the institution of contempt proceedings, the burden is on him to purge himself of the contempt by showing clearly that he has complied with the decree, or his inability so to do, or the impossibility of performance. Ramsay v. Ramsay, supra; Redding v. Redding, supra; Kincaid v. Kincaid, 213 Miss. 451, 57 So. 2d 263.

It would have been impossible for the court to give relief from civil liability for the alimony which had accrued prior to October 28, 1950. See authorities cited above.

The proof showed that the appellant, from 1950 to the date of the trial, has had a substantial earning capacity. Still during that period of time he has paid appellee nothing. He attempted to detail his necessary expenditures. The court heard all of this evidence, had a full opportunity to appraise it in its entirety, and found as a fact that the appellant could have made the payments or substantial amounts thereon. The evidence was sufficient to sustain that finding, and it cannot be overturned here.

Consequently the appellant's contentions, namely, that the court erred in finding him guilty of contempt, in refusing to absolve him from liability for payments for the years 1950 to 1956 inclusive and until

February 4, 1957, and in overruling his motion to dismiss the petition in that regard, for the reasons hereinabove stated, are untenable.

The appellee, on cross-appeal, contends that the court erred in failing to allow her to recover for the unpaid installments from November 1945 through October 1950, and in setting the bond to insure compliance with the decree at only $1,000.

A sufficient answer to the first contention is that the payments for that period of time had already accrued. They were valid judgments, under the authorities above cited, and no further declaration by the court was necessary.

As to the second contention, the court, under the evidence in the case, evidently recognized the utter impossibility of compelling the appellant to pay the large sum of money adjudged against him, or to give security therefor. Consequently the court, in the exercise of sound judicial discretion, let the appellant purge himself of the contempt by the payment of future installments as and when they should come due, and, to that end, required the execution of the bond as security for such payments. That action in no wise relieves the appellant from liability for payment of the installments which were past due on the date of the decree. Appellee still has every right afforded to a judgment creditor for the collection of a judgment.

Hence it follows that the cause should be affirmed both on the direct and on the cross appeals.

Affirmed.

*Roberds, P. J.,* and *Kyle, Arrington,* and *Gillespie, JJ.,* concur.