305 S.E.2d 304

**Mary Kathryn PRATHER**

v.

**Charles H. PRATHER.**

**No. 15728.**

Supreme Court of Appeals of West Virginia.

July 7, 1983.

Thomas E. Myles, Fayetteville, for appellee.

James M. Cagle, Charleston, for appellant.

MILLER, Justice:

This is an appeal by Charles H. Prather from a final divorce order entered by the Circuit Court of Fayette County. The order impressed a trust on a $30,000 certificate of deposit registered in Mr. Prather's name to secure his payment of alimony and medical expenses to his former wife. Mr. Prather contends that the circuit court erred in impressing the trust on the certificate. He also claims that the circuit court erred in holding him answerable in contempt for failure to pay temporary alimony or alimony *pendente lite,* when the hearing occurred after the entry of the court's final divorce decree. We find that the Circuit Court of Fayette County had the power to impress the trust but because its decree was ambiguous, we remand the case. We also affirm the authority of the circuit court to render the judgment for back temporary alimony.

Mr. Prather and his wife had been married for thirty-eight years when this proceeding was instituted. By order dated April 29, 1980, the circuit court directed that Mr. Prather pay his wife $475 per month as temporary alimony. The court also directed that he maintain hospitalization insurance on her and that he pay certain other medical expenses incurred by her. On March 2, 1981, Mrs. Prather moved that her husband be held in contempt for failing to make the payments required by the April 29, 1980, order. Before this question was resolved, hearings were held in the final divorce proceeding.

At the final hearing, evidence was introduced showing that when Mr. Prather retired from his employment with the New River Company he had chosen to receive a lump sum distribution of $47,000 in lieu of a pension. From the lump sum retirement payment, he had set aside the sum of $17,000 for potential tax liability, and with the remaining $30,000 he had purchased a certificate of deposit from a local savings and loan company. Evidence was also introduced showing that Mrs. Prather was a housewife, that she was fifty-five years of age, and that during her thirty-eight years of marriage she had not been gainfully employed. The evidence indicated that she was in poor health and would likely need continuing medical care.

At the conclusion of the final hearing, the Circuit Court of Fayette County awarded a divorce to Mrs. Prather and held that she was entitled to permanent alimony of $500 per month. The court directed Mr. Prather to pay necessary doctors' fees, hospital bills, and surgical expenses for his wife.[1] The court also ordered that the certificate of deposit be impressed with a trust to secure the payment of permanent alimony and medical expenses ordered in favor of the wife. The trust was made binding on the husband's heirs and devisees.[2]

The final divorce decree made no mention of the arrearages for temporary alimony nor of the contempt petition which had been filed to obtain those payments. The court subsequently held a hearing and concluded that the appellant had not complied with the temporary alimony order.

Mr. Prather claims that the trial court erred in ordering that his certificate of deposit should be impressed with a trust and making it binding on his estate. He argues that a trial court, in a domestic relations case, has authority only to impress a trust under W.Va.Code, 48–2–15 (1980), on one party's property to effectuate a decree of maintenance to prevent fraud or other wrongful disposition of property.[3]

---

1. The portion of the court's February 19, 1982, decree with regard to permanent alimony and medical expenses was:

   "It is ... ORDERED that the defendant is to pay unto the plaintiff the sum of $500.00 per month as alimony, and the defendant is ORDERED to pay all necessary doctors' fees, hospital bills and surgical expenses which may be incurred by the plaintiff for treatment of her chronic back ailment."

2. The language of the order is:

   "It is ORDERED that the savings account in a Certificate of Deposit now held in the defendant's name at Fayetteville Federal Savings and Loan Association, Fayetteville, West Virginia, in the amount of $30,000.00 is and shall be impressed with a trust to secure alimony and medical expenses, and a copy of this order shall be placed with the account card at the Fayetteville Federal Savings and Loan Association and the account so marked in order that the defendant may make no withdrawal from said savings account or Certificate of Deposit without a further order of the Court, it being the intention of the Court that said sums shall be held in trust to secure plaintiff's alimony and medical expenses, and said trust shall continue and be binding upon the defendant's heirs, devisees and assigns and shall terminate only upon the death or remarriage of the plaintiff."

3. The pertinent portion of W.Va.Code, 48–2–15 (1980), which contains the same language as found in the 1931 Revised Code, provides:

   "Upon ordering a divorce, the court may make such further order as it shall deem expedient, concerning the maintenance of the parties, or either of them; and upon ordering the annulment of a marriage, or a divorce, the court may make such further order as it shall deem expedient, concerning the care, custody, education and maintenance of the minor children."

We do not believe that our law restricts the authority of a trial court to impress a trust to those situations involving fraud or other wrongful disposition of property. In the single Syllabus of *Smith v. Smith*, 134 W.Va. 448, 59 S.E.2d 894 (1950), we discussed the scope of this statute:

> "In a suit for divorce, courts are empowered by Code, 48–2–15, to enter such orders and decrees as may be deemed expedient to secure compliance with orders and decrees relating to the care, custody, education and maintenance of minor children, including the power to impound personal property; such power is a discretionary one, reviewable by the Supreme Court of Appeals."

In *Smith*, we concluded that the trial court abused its discretion by directing that a cashier's check received by the husband from the sale of bonds be delivered to the general receiver of the court as security for payment of child support obligations. We concluded that the trial court abused its discretion since the amount impounded constituted "practically all of the savings of the parties at the time of the entry of the final decree." 134 W.Va. at 455, 59 S.E.2d at 898. Furthermore, we found that the husband "had indicated ... [no] disposition to avoid personal responsibility of support and maintenance of his two children." 134 W.Va. at 455, 59 S.E.2d at 898–99.

Other jurisdictions with general statutes like ours have followed the *Smith* rationale and have recognized the power to impress a trust on personal property to secure alimony or child support payments in certain situations. *E.g., Rosenthal v. Rosenthal*, 197 Cal.App.2d 289, 17 Cal.Rptr. 186 (1961) (alimony); *Jones v. State*, 85 Idaho 135, 376 P.2d 361 (1962), *reh. denied*, 85 Idaho 148, 376 P.2d 368, 3 A.L.R.3d 1167 (1962) (child support); *Atkinson v. Atkinson*, 82 Ill. App.3d 617, 37 Ill.Dec. 829, 402 N.E.2d 831 (1980), *cert. denied*, 456 U.S. 905, 102 S.Ct. 1751, 72 L.Ed.2d 162 (1982) (child support); *Kuyper v. Kuyper*, 244 Iowa 1, 55 N.W.2d 485 (1952) (alimony and child support); *Hemman v. Hemman*, 251 S.W. 313 (Tex. Civ.App.1923) (child support); *Abel v. Abel*, 47 Wash.2d 816, 289 P.2d 724 (1955); Annot., 3 A.L.R.3d 1170 (1965).[4] In most of these cases, the courts have not elaborated any guidelines for determining when a trust should be imposed. In *Atkinson v. Atkinson, supra,* the court made this statement which is reminiscent of the language used by this Court in *Smith v. Smith, supra:*

> "Nevertheless, we believe imposition of a section 503(d) trust is inappropriate in the absence of evidence showing some need to protect the interests of the children. *See In re Marriage of Olsher* (1979), 78 Ill.App.3d 627, 34 Ill.Dec. 32, 397 N.E.2d 488.
>
> "Although Jeff Atkinson's assets have been reduced, there is no evidence that this was caused by irresponsible actions. Nor was there any evidence to show that Jeff Atkinson would be likely to ignore his daughters' financial needs in the future. The evidence presented below demonstrated that Jeff Atkinson has been a fit, devoted and responsible parent. Under these circumstances we conclude the trial court exceeded the scope of its discretion in ordering the establishment of a trust fund for the benefit of the children." 82 Ill.App.3d at 627, 37 Ill.Dec. at 836, 402 N.E.2d at 838.

---

**4.** In *Smith v. Smith,* 134 W.Va. at 454, 59 S.E.2d at 898, we recognized that:

> "In *Goff v. Goff*, 60 W.Va. 9, 53 S.E. 769, the Court held that a decree for alimony constituted a lien upon land of the husband, but that conclusion was reached because of the provisions of a statute which provided that 'every judgment for money rendered in this State heretofore or hereafter against a person shall be a lien on all real estate of or to which such person shall be entitled at or after the date of the judgment.' "

*Goff's* result has been modified by W.Va.Code, 48–2–17 (1969), which provides:

> "An order for support, maintenance or alimony shall not give rise to a lien on any real estate of the person against whom the order is entered until such order is entered of record in the office of the clerk of the county court where any such real estate is situate. On and after the effective date of this section [April 1, 1969], any such order shall be recorded in the same manner as other judgments are recorded."

■ It seems clear from *Smith* and the other cases that we have cited that, as a general rule, the law does not require a showing of fraud or wrongful disposition of property in order to impose a trust on personal property for security for payment of child support or alimony obligations. However, there is a necessity of demonstrating some significant circumstance that would justify the imposition of such trust. A trial court must make such findings before ordering the trust imposed.

■ In the present case, we do not have a complete record of the proceedings below. It appears that Mr. Prather had failed to make some temporary alimony payments, but facts definitely demonstrating this point are not in the record. We can envision situations where the failure to pay temporary alimony or child support payments would be sufficient for utilization of a security trust. Property shifting or concealment of assets in anticipation of the divorce might also warrant application of a trust. In view of our remand, the circuit court is entitled to review the trust question and place appropriate findings in the record if it is to be continued.

■ Another problem presented in this case is whether it was proper to make the trust provision binding upon the husband's estate. This practice has been recognized. *E.g., Jones v. State, supra; Guggenheimer v. Guggenheimer,* 99 N.H. 399, 112 A.2d 61 (1955); *Grotsky v. Grotsky,* 58 N.J. 354, 277 A.2d 535 (1971); Note, *Continuance of Alimony and Payments for Support of Minor Children after a Husband's Death,* 35 Va.L.Rev. 482 (1949). However, we are unaware of any case that contains any extensive discussion of the issue. In the case before us, the portion of the decree granting permanent alimony did not make such alimony binding on the husband's estate. *See* note 1, *supra.* However, the portion of the final decree creating the trust did. *See* note 2, *supra.* We recognized in Syllabus Point 2 of *In Re Estate of Hereford,* 162 W.Va. 477, 250 S.E.2d 45 (1978), that in certain instances alimony may be made binding on a former spouse's estate:

"While as a general rule alimony does not survive the death of the payor former spouse, where there are compelling equitable considerations which militate in favor of making alimony a charge against a deceased former spouse's estate, the circuit court has the power to make such an award pursuant to the same authority which entitles a court of equity to modify any alimony award to reflect changed circumstances."

This view is supported by dictum in earlier West Virginia cases. *Jennings v. Bank,* 116 W.Va. 409, 180 S.E. 772 (1935); *Hale v. Hale,* 108 W.Va. 337, 150 S.E. 748 (1929). In *Hale v. Hale, supra,* we expressed the opinion that the statute (now W.Va.Code, 48-2-15) empowering a divorce court to make such decree as it deemed expedient concerning the estate and maintenance of the parties was "of sufficient breadth to warrant a requirement by the trial court that permanent alimony be paid out of a husband's estate after his death, when, in the chancellor's opinion, such course is just and right." 108 W.Va. at 341, 150 S.E. at 749. Our rule is widely followed. *Rouse v. Rouse,* 313 So.2d 458 (Fla.App.1975); *In re Roberts' Estate,* 257 Iowa 1, 131 N.W.2d 458 (1964); *Surabian v. Surabian,* 362 Mass. 342, 285 N.E.2d 909 (1972); *La Barge v. La Barge,* 312 Mich. 157, 20 N.W.2d 143 (1945); *Masters v. Masters,* 155 Neb. 569, 52 N.W.2d 802 (1952); *Stritch v. Stritch,* 106 N.H. 409, 213 A.2d 426 (1965); *Diment v. Diment,* 531 P.2d 1071 (Okl. App.1974); *Bird v. Henke,* 65 Wash.2d 79, 395 P.2d 751 (1964); Annot., 39 A.L.R.2d 1406 (1955).

■ While we recognize the right of a divorce court to make alimony payments binding on a spouse's estate, it would seem apparent that in order for this to occur the trial court must so specify in the final order. There is some divergence of view as to the specificity of language required to make alimony or child support payments binding on an estate. Annot., 39 A.L.R.2d 1406, 1412 (1955). We believe that the better rule is that in order for alimony to be binding on an estate the divorce decree, or property settlement agreement if it is ratified or approved in the court decree,

must specifically state that the obligation is binding on the estate. *E.g., Estate of Kuhns v. Kuhns,* 550 P.2d 816 (Alaska 1976); *Kendall v. Kendall,* 218 Kan. 713, 545 P.2d 346 (1976); *Bailey v. Bailey,* 86 Nev. 483, 471 P.2d 220 (1970); *Scudder v. Scudder,* 55 Wash.2d 454, 348 P.2d 225 (1960). In *Bailey v. Bailey,* 86 Nev. at 487, 471 P.2d at 222, the court after indicating that several states do not require specific language, stated:

> "Instead, like the Washington court, 'we are convinced that if a judicial decree is to be held to impose upon the father a greater duty of child support than that required by the common law, the decree must specifically state that such obligation is to survive the death of the obligor.' *Scudder v. Scudder,* 55 Wash.2d 454, 348 P.2d 225, 228 (1960)."

In the absence of a specific finding on the part of the circuit court that the alimony payments were to be binding on the husband's estate, the circuit court was not authorized to make the trust on the certificate of deposit binding on the husband's estate.

Mr. Prather also contends that the circuit court was barred from considering whether he was in arrears on his temporary alimony payments after the entry of the final divorce decree awarding permanent alimony. We are unaware of any West Virginia case which discusses this question. The views of other jurisdictions vary, as explained in Clark, *Law of Domestic Relations* 427–28 (1968):

> "In fact some authorities go so far as to hold that temporary alimony due and owing for the period up to the date of final decree cannot be collected after that date, because the temporary alimony order is 'merged' in the final decree of divorce and all enforcement proceedings fall with the order. This is an entirely senseless rule since it rewards the recalcitrant husband for non-compliance with the court's order by excusing him from payment of arrears. The majority of cases reach the opposite result." (Footnotes omitted)

*E.g., Washington v. Washington,* 163 Cal. App.2d 129, 329 P.2d 115 (1958); *Bork v. Richardson,* 289 N.W.2d 622 (Iowa 1980); *Button v. Button,* 222 A.2d 245 (Me.1966); *Mazer v. Mazer,* 276 A.D. 733, 97 N.Y.S.2d 59 (1950); *Ex parte Davis,* 597 S.W.2d 501 (Tex.Civ.App.1980). *See* Annot., 154 A.L.R. 530 (1945).

We do not believe the "merger" theory to be logical as to temporary alimony payments that are in arrears at the time of the entry of the final decree. We have consistently given a liberal interpretation to our statute authorizing temporary alimony and child support. W.Va.Code, 48–2–13 (1977). In Syllabus Point 3 of *Hatfield v. Hatfield,* 109 W.Va. 212, 153 S.E. 493 (1930), we said: "In a suit for divorce, it is the duty of the circuit court to make an allowance to the wife, where she makes application therefor, for money with which to prosecute her suit and for her maintenance during such litigation." In *State ex rel. Cooper v. Garvin,* 139 W.Va. 845, 82 S.E.2d 612 (1954), we recognized that mandamus would lie to compel a circuit court to make an award for temporary support and suit and counsel fees to a spouse who had suffered an adverse decree and wished to take an appeal. This was an extension of *State ex rel. Davis v. Isbell,* 108 W.Va. 104, 150 S.E. 377 (1929), in which we held that mandamus would lie to compel a circuit court to award temporary alimony.

From a policy standpoint, we believe it is inappropriate to sanction a rule that would enable a party to avoid payment of accrued temporary alimony on the basis that a final order has been entered. Our cases make it clear that the statutory right to obtain temporary alimony and support payments is intended to provide an economically deprived spouse with maintenance money during the pendency of the divorce. The beneficial purpose of the statute would be defeated by permitting the party responsible for paying temporary alimony to defeat the claim by showing that a final divorce decree had been entered.

Furthermore, in those jurisdictions adopting the merger rule, it would seem that such a rule would encourage unneces-

sary delay in the final resolution of divorce actions. Where there is an arrearage on temporary alimony or support, the party to whom the arrearage is owed would resist entry of a final decree until the court holds a hearing and enters an order compelling payment of the arrearage. We can see no valid reason for adopting the merger rule.

We, therefore, hold that a final divorce decree does not preclude a circuit court from subsequently determining upon proper motion that there is an arrearage on temporary alimony or child support that has occurred before the entry of the final decree.[5] Consequently, we find the circuit court had jurisdiction to hear the question of the amount of back temporary alimony.

For the foregoing reasons, we remand this case for further proceedings in conformity with the principles hereinabove stated.

Remanded.

---

5. The law is settled that the right to continued temporary alimony and support ordinarily ends with the entry of the final divorce decree. 24 Am.Jur.2d *Divorce and Separation* § 558 (1966). In this case, we deal with amounts unpaid before the entry of the final decree.