586 So.2d 740 (1991)
Milton LEWIS
v.
Minnie Lee LEWIS.
No. 90-CA-0195.
Supreme Court of Mississippi.
August 14, 1991.
Rehearing Denied October 23, 1991.
Wm. Andy Sumrall, Jackson, for appellant.
Billy W. Keyes, James W. Younger, Jr., Keyes Danks Moss & Leonard, Jackson, for appellee.
Before DAN M. LEE, P.J., and PRATHER and PITTMAN, JJ.
PITTMAN, Justice, for the Court:

I.
Minnie Lewis instituted this action to hold Milton Lewis in contempt of court for the non-payment of temporary alimony and medical bills due and owing. Milton Lewis claimed that he did not owe temporary alimony to his wife pursuant to the property settlement agreement between the parties. The Chancery Court of Hinds County, Second Judicial District, found Milton Lewis to be in contempt of court awarding a judgment against him for $1,700.00 in temporary alimony and $511.81 in medical bills. Finding no error in the lower court's ruling, we affirm.

II.
Minnie Lewis filed a Complaint for Divorce against Milton Lewis in the Chancery Court of Hinds County on June 24, 1987. On August 14, 1987, the parties entered into an agreed temporary order that provided that Milton Lewis would pay his ex-wife $550.00 per month as temporary alimony.
On July 12, 1988, the parties entered into a property settlement agreement pursuant to their divorce on grounds of irreconcilable differences. The settlement provided in part:
10. Both parties hereby certify and stipulate that this Property Settlement Agreement contains the entire agreement and understanding of the parties, and there are no other agreements between them not set forth specifically *741 herein, and each party hereby agrees that this Separation and Property Settlement Agreement fully, finally, and forever settles all rights, claims, and demands by either of them for support, alimony, maintenance, expenses and any other rights and obligations arising out of the marriage relationship.
11. Husband and Wife respectfully hereby relinquish and release each and every right and privilege they now have or may hereafter acquire from each other as a result of said marriage.
This agreement was incorporated into the final judgment of divorce entered on July 13, 1988.
On August 4, 1989, Minnie Lewis filed this action attempting to hold her ex-husband in contempt of court for non-payment of temporary alimony and medical bills pursuant to the agreed temporary decree of August 14, 1987. Minnie Lewis claimed that she was owed $2,309.03 for temporary alimony for the months of December, 1987, and January, February, April, May and June of 1988. Milton Lewis answered the allegations of his ex-wife asserting that the property settlement agreement incorporated into the final decree of divorce had settled all rights and obligations between the parties.
Upon a hearing before Chancellor Owens, the lower court issued its ruling finding that Milton Lewis was in contempt of court owing his ex-wife $1,700.00 for past due temporary alimony and $511.81 for medical bills. Aggrieved by the lower court's ruling, appellant perfected this appeal.

III.
The issue on appeal is essentially whether or not the final decree of divorce relieved Milton Lewis from paying an arrearage of temporary alimony which accrued before the entry of that final decree. A search of this state's jurisprudence does not reveal a case addressing the narrow issue before this Court. There is, however, authority supporting the chancellor's ruling in this matter.
The Supreme Court of West Virginia addressed the issue at bar in the 1983 case of Prather v. Prather, 305 S.E.2d 304 (W. Va. 1983). In that case, the West Virginia court held that a final decree of divorce does not preclude a lower court from determining that there is an arrearage of temporary alimony that occurred before the entry of the final decree. Quoting from Clark, Law of Domestic Relations 427-28 (1968), that court stated:
In fact some authorities go so far as to hold that temporary alimony due and owing for the period up to the date of final decree cannot be collected after that date, because the temporary alimony order is `merged' in the final decree of divorce and all enforcement proceedings fall with the order. This is an entirely senseless rule since it rewards the recalcitrant husband for non-compliance with the court's order by excusing him from payment of arrears. The majority of cases reach the opposite result. (footnotes omitted) E.g., Washington v. Washington, 163 Cal. App.2d 129, 329 P.2d. 115 (1958); Bork v. Richardson, 289 N.W.2d 622 (Iowa 1980); Button v. Button, 222 A.2d 245 (Me. 1966); Mazer v. Mazer, 276 A.D. 733, 97 N.Y.S.2d 59 (1950); Ex parte Davis, 597 S.W.2d 501 (Tex.Civ.App. 1980). See Annot., 154 A.L.R. 530 (1945).
Prather, 305 S.E.2d at 310. The West Virginia court went further by next discussing the policy behind the Prather ruling. The court stated:
From a policy standpoint, we believe it is inappropriate to sanction a rule that would enable a party to avoid payment of accrued temporary alimony on the basis that a final order has been entered. Our cases make it clear that the statutory right to obtain temporary alimony and support payments is intended to provide an economically deprived spouse with maintenance money during the pendency of the divorce. The beneficial purpose of the statute would be defeated by permitting the party responsible for paying temporary alimony to defeat the claim by showing that a final divorce decree had been entered.

*742 Furthermore, in those jurisdictions adopting the merger rule, it would seem that such a rule would encourage unnecessary delay in the final resolution of divorce actions. Where there is an arrearage on temporary alimony or support, the party to whom the arrearage is owed would resist the entry of a final decree until the court holds a hearing and enters an order compelling payment of the arrearage. We can see no valid reason for adopting the merger rule.
Id.
The issue at bar was also ruled upon by the Supreme Court of Utah in the 1987 case of Druce v. Druce, 738 P.2d 633 (Utah 1987). In Druce, a husband was in arrears in his temporary support payments when the parties entered into a final decree of divorce. Arguing that all rights had been resolved by the divorce decree, the husband asserted that his wife's claim to unpaid temporary child support was res judicata. Rejecting this assertion, the Druce court stated as follows:
On appeal, defendant asserts that the temporary support order merged into the final decree and, since the final decree is silent regarding the delinquent temporary support payments, the doctrine of res judicata precludes plaintiff from seeking any unpaid amounts that accrued under the temporary order.
* * * * * *
We recognize that a few courts have adopted the rule advocated by defendant... . However, we disagree with those decisions. A rule that denies recovery of accrued unpaid obligations under a temporary order unless they are expressly preserved by the final order is `entirely senseless ... [because] it rewards the recalcitrant husband for non-compliance with the court's order by excusing him from payment of arrears.' H. Clark, Law of Domestic Relations, § 14.2 at 428 (1968).
* * * * * *
We prefer to adopt the opposing rule which appears to have gained widespread support. See, e.g. Bork v. Richardson, 289 N.W.2d 622, 625 (Iowa 1980); Button v. Button, 222 A.2d 245, 247 (Me. 1966); In re Marriage of Warren, 31 Or. App. 213, 570 P.2d 104, 106-07 (1977); Ex parte Shaver, 597 S.W.2d 498, 500 (Tex.Civ.App. 1980); Prather v. Prather, 305 S.E.2d at 310. We therefore hold that payments that become due and payable under a temporary order may be reduced to judgment after entry of the final decree, despite the failure of that decree to expressly preserve them.
Druce, 738 P.2d at 634.
The chancellor, in her ruling in this matter, relied upon this Court's decisions in Rainwater v. Rainwater, 236 Miss. 412, 110 So.2d 608 (1959); and Rubisoff v. Rubisoff, 242 Miss. 225, 133 So.2d 534 (1961). In Rainwater v. Rainwater, this Court held that after alimony has accrued, the party to whom it was awarded has a vested right thereto. We stated:
It is settled beyond question by the decisions of this Court that, after alimony has accrued, there is a vested right thereto, and that interest is allowed thereon. Guess v. Smith, 100 Miss. 457, 56 So. 166; Schaffer v. Schaffer, 209 Miss. 220, 46 So.2d 443; Gibson v. Clark, 216 Miss. 430, 62 So.2d 585. Besides a court cannot give relief from civil liability for any payments that have already accrued. Lewis v. Lewis, 213 Miss. 434, 57 So.2d 163.
Rainwater, 236 Miss. at 420-21, 110 So.2d at 610-11.
In Rubisoff v. Rubisoff, this Court held that installments of alimony under a divorce decree become fixed and vested when due and unpaid. The court stated:
Appellee paid alimony to appellant for a period of six months, but after he obtained custody of their child, he ceased paying appellant. It is a well-settled rule of law in this State that installments of alimony become fixed and vested when due and unpaid. Rainwater v. Rainwater, 236 Miss. 412, 110 So.2d 608; Gibson v. Clark, 216 Miss. 430, 62 So.2d 585; Lewis v. Lewis, 213 Miss. 434, 57 So.2d 163; Guess v. Smith, 100 Miss. 457, 56 So. 166; Schaffer v. Schaffer, 209 Miss. 220, 46 So.2d 443; Grego v. Grego, 78 *743 Miss. 443, 28 So. 817; 27-B.C.J.S. Divorce § 276(g), p. 190. We therefore hold that payments due appellant became vested as they became due for the sum set out in the divorce decree directed to have been paid to appellant by the appellee.
Rubisoff, 242 Miss. at 235, 133 So.2d at 537.
In recent decisions, not cited by the lower court, this Court has affirmed the decisions in Rainwater v. Rainwater and Rubisoff v. Rubisoff. See, Brand v. Brand, 482 So.2d 236 (Miss. 1986); and Bowe v. Bowe, 557 So.2d 793 (Miss. 1990). In this regard, we feel that the trial judge was correct in her ruling.
As noted by the decisions of this Court, an obligation owed by one spouse to the other becomes fixed and vested when due and unpaid. This obligation will not be discharged or amended in an agreement between the parties unless it is explicitly plead before an informed court. To amend a prior decree, even if a temporary one, the parties hereafter should recite the change and present the same to the Court, otherwise we are in the inexplicable position of having an order of the Court changed by the parties without consideration for or by the Court. We are in agreement that Milton Lewis was not discharged of his duty to pay the past due temporary alimony by the final decree of divorce. Therefore, we affirm the judgment of the lower court.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN and BANKS, JJ., concur.
McRAE, J., dissents by separate written opinion joined by DAN M. LEE, P.J.
McRAE, Justice, dissenting:
Because I think both parties have had their day in court, that there should be an end to litigation, and that we have encouraged parties to contract with each other to resolve their disputes so there will be less litigation, I respectfully dissent.
Temporary alimony, or alimony pendente lite, is allowance made by an interim order for a spouse pending a suit for divorce or separate maintenance, including a reasonable allowance for preparation of the suit, as well as for support. Temporary alimony is simply to maintain the status quo until a final determination is made.
A review of the record shows that Minnie Lee Lewis filed for divorce on June 24, 1987. On August 14, 1987, an agreed temporary order for temporary alimony was filed stating that Milton Lewis would pay Minnie $550.00 per month. Said order was to remain in effect until further order of the court. On January 13, 1988, Minnie Lewis filed a motion to extend the temporary order for alimony and prayed for a one hundred eighty (180) day extension. An order appears to have been entered on the same date.
Approximately seven months later, on July 12, 1988, Minnie and Milton Lewis signed a property settlement agreement in which both parties were represented by attorneys. The said property settlement agreement was sworn to by both Minnie Lewis and Milton Lewis, wherein they stated under oath that "all the matters and facts set forth are true and correct."
After a close perusal of the property settlement, I find that it is most indicative of the parties' intent. Both parties agreed to an exhaustive and comprehensive property division, which included everything from real property to households items. As to additional monies, the agreement further stated as follows:
8. All property and monies not mentioned herein have been previously divided by the parties to the mutual satisfaction of each party. This agreement is intended to, and does, fully and finally settle all property rights between the parties.
9. The parties acknowledge that they have read this Property Settlement Agreement, and it is a fair contract and is not the result of any fraud, duress, or undue influence exercised by either party upon the other, or by any other person or persons upon either party.

*744 10. Both parties hereby certify and stipulate that this Property Settlement Agreement contains the entire agreement and understanding of the parties, and there are no other agreements between them not set forth specifically herein, and each party hereby agrees that this Separation and Property Settlement Agreement fully, finally, and forever settles all rights, claims, and demands by either of them for support, alimony, maintenance, expenses and any other rights and obligations arising out of the marriage relationship.

11. Husband and wife respectfully hereby relinquish and release each and every right and privilege they now have or may hereafter acquire from each other as a result of said marriage.
* * * * * *
13. This Agreement shall be binding on the parties herein, the administrators, executors and assigns. It is the whole and only Agreement between the parties and shall not be modified or varied by parole evidence.
* * * * * *
15. The Husband and Wife agree that this Agreement may be attached to and made a part of any Final Judgment of Divorce rendered in the Chancery Court of Hinds County, Mississippi, and the terms embodied in such Final Judgment will be binding upon the parties.
On the following day, a judgment of divorce was entered in the Chancery Court of the First Judicial District of Hinds County, executed by Chancellor Alexander. The judgment stated that the property settlement agreement, which included alimony, was incorporated in the judgment for divorce and thereby became a part of the judgment entered July 13, 1988, as follows: "... said agreement is attached hereto and made a part hereof as if copied fully herein in words and figures and marked Exhibit "A"; and further that the parties hereto be, and they are hereby ordered to adhere to all provisions set out herein." This judgment was agreed to and approved not only by the parties, but by both attorneys, being Peter Corson, attorney for Minnie Lee Lewis, and Patricia D. Wise, the attorney for Milton Lewis.
The no-fault divorce law was created to encourage litigants to not blame one another for the dissolution of the marriage contract. The law was established in 1976 as a means to encourage spouses to resolve their differences, agree to amicable settlements, and part their separate ways to lead their separate lives. In 1988, in order to obtain a divorce under the irreconcilable differences law, the parties had to agree on a property settlement, which included any alimony or matters involving or touching upon custody or maintenance of a child of the marriage, as shown under Miss. Code Ann. § 93-5-2 (Supp. 1978), which states:
No divorce shall be granted on the ground of irreconcilable differences unless the court shall find in its decree that the parties have made adequate and sufficient provision by written agreement for the custody and maintenance of any children of that marriage and for the settlement of any property rights between the parties. The agreement may be incorporated in the decree, and such decree may be modified as other decrees for divorce....[1]
In Switzer v. Switzer, 460 So.2d 843 (Miss. 1984) (Robertson, J.), this Court stated that when compliance with Miss. Code Ann. § 93-5-2 has been met, the custody, support, alimony and property settlement agreement becomes a part of the final decree for all legal intents and purposes. We further said this is so, whether the agreement is copied verbatim into the text of the decree, attached as an exhibit and incorporated by reference, or is simply on file with the clerk of the court.
The Court further stated in Sullivan v. Pouncey, 469 So.2d 1233 (Miss. 1985) (Anderson, J.), that when parties have obtained a divorce on grounds of irreconcilable differences and submitted property settlement agreements which have been incorporated by the court into a final decree, *745 contradictory, private contracts entered into by the parties are void as against public policy. This was done so that the court at trial may be fully apprised of all agreements and can consider all testimony and circumstances involved in rendering its decree. These are incorporated into its final decree, from which appeal may be taken.
We recognize that in domestic cases the majority of the rules of civil procedure may not apply. However, as stated under Comments to Rule 81, where controlling statutes are silent as to procedure, such as service and filings of pleadings, computation of time, pleadings, motions, discovery, judgments, process and times for hearing, etc., the rules would apply. Appellee Minnie Lewis did not feel aggrieved of that judgment or proceed under Rules 58, 59 or 60, but simply one year later filed a motion for contempt to require the appellant to pay for temporary alimony. Since she did not appeal, she should not be allowed to ask this Court today to go behind a final decree.
When cross-examined by the appellant's attorney, Minnie Lewis explained why she signed the separation agreement releasing any and all temporary alimony claims as follows:
BY THE COURT: Now you may explain your answer.
A. [Witness] Okay. When we went up for divorce and when I got this here from my attorney then, Mr. Corson, and went over it, I asked him about signing it. He told me this didn't have anything to do with this. This is the reason I signed it. He said Milton had signed it and we would probably never get him to sign it again, and this does not  we still can go on. We went up in June to file this thing on temporary alimony again, and he said, We can continue this after we go to divorce. This is the only reason I signed it.
As this Court recently stated in McManus v. Howard, 569 So.2d 1213, 1215 (Miss. 1990) (Blass, J.):
The law favors the settlement of disputes by agreement of the parties and, ordinarily, will enforce the Agreement which the parties have made, absent any fraud, mistake, or overreaching. First Nat'l Bank of Vicksburg v. Caruthers, 443 So.2d 861, 864 (Miss. 1983); Weatherford v. Martin, 418 So.2d 777, 778 (Miss. 1982). This is as true of agreements made in the process of the termination of the marriage by divorce as of any other kind of negotiated settlement. Newell v. Hinton, 556 So.2d 1037, 1042 (Miss. 1990); East v. East, 493 So.2d 927, 931-32 (Miss. 1986). They are contracts, made by the parties, upon consideration acceptable to each of them, and the law will enforce them. East, 493 So.2d at 932-33. Court will not rewrite them to satisfy the desires of either party. Travelers Indem. Co. v. Chappell, 246 So.2d 498, 510 (Miss. 1971). With regard to the property of the parties, this is a strong and enforceable rule with few, if any, exceptions. Osborne v. Bullins, 549 So.2d 1337, 1339 (Miss. 1989); Morris v. Morris, 541 So.2d 1040 (Miss. 1989).
Simply put, the parties have agreed and signed under oath that they had resolved all claims, including alimony, and presented the agreement to the court; the court reviewed it, agreed with it, and adopted it in its final judgment, from which no party has appealed. The majority opinion abandons the doctrine of res judicata, or at least carves out an exception in the name of domestic cases. Temporary alimony is nothing but an interim order that has been entered to keep the parties at status quo until a final hearing on the merits. It is my opinion the temporary alimony order merged into the final decree and Mrs. Lewis is estopped from collecting for non-payment of the temporary alimony.
Ohio follows the doctrine of merger as evidenced in Colom v. Colom, 58 Ohio St.2d 245, 389 N.E.2d 856 (1979) wherein the court stated:
[T]he majority feel[s] that the better rule to be followed by the courts of Ohio is that which tends to eliminate delayed actions upon old or "stale" claims. It is our view that not only should the interim orders be merged within the final judgment, *746 but the right of action or enforcement of such interim orders should not be extended beyond the final decree unless specifically reduced to judgment or referred to within the decree.
Colom, 389 N.E.2d at 858. See also Royse v. Royse, 23 Ohio Misc.2d 5, 491 N.E.2d 397 (1984) (Colom also applies to temporary child support orders).
At no time during the final hearing on the merits did the appellee or her attorney recognize that the order was an interim order and not a final judgment, as the final judgment would come after the hearing on the merits. No contempt hearing prior to the final decree or the hearing on the merits was brought before the court. No statement was made by appellee or appellee's attorney that there was any other problem, when, in truth and fact, the appellee said there were no other problems or issues outstanding and swore to it under oath. The court incorporated that agreement into the final judgment, from which no appeal was taken. This is purely a sandbagging position on the part of the appellee and her attorney, not only to the court, but to the litigant. There must be a finality. To allow a litigant to come back into court at a later time, having full intention of bringing up other issues that have occurred in the past without having a finality, would be an absurdity on this Court.
Further, the comment to Miss.R.Civ.P. 13 notes that the purpose of the rule "... is to grant the court broad discretion to allow claims to be joined in order to expedite the resolution of all controversies between the parties in one suit... ."
The majority has stated that the lower court must be informed of any changes agreed to by the parties even when it involves a temporary order. The parties did inform the court when they waived all claims for temporary alimony and the agreement was incorporated in the final judgment.
The courts are here to resolve disputes between parties, but the majority opinion increases litigation, instead of ending and having finality to litigation. This would be true particularly in the domestic area, whereby parties could go back behind decrees and say, "There are some issues that I have yet to bring up which I didn't bring up the last time" and relitigate them. Or, as in this case, make agreements with a party, have the chancery court totally ignore the agreement, and then say to the court later, "I want you to now give me the money even though I told you under oath that I had waived and signed a release for all claims."
I am convinced that res judicata or the merger doctrine, is the better approach. To hold otherwise opens up the floodgates and invites more litigation. I, therefore, would reverse and render.
DAN M. LEE, P.J., joins this dissent.
NOTES
[1] The statute was amended again in 1990.