879 So.2d 1078 (2004)
Alyison Ann (Tarver) ALEXIS, Appellant
v.
Floyd Lee TARVER, Appellee.
No. 2003-CA-01644-COA.
Court of Appeals of Mississippi.
August 3, 2004.
*1079 Alfred L. Felder, McComb, attorney for appellant.
Floyd Lee Tarver, appellee, pro se.
Before SOUTHWICK, P.J., CHANDLER and GRIFFIS, JJ.
SOUTHWICK, P.J., for the Court.
¶ 1. In the parties' divorce decree, the former wife was granted rehabilitative alimony, contingent on her abandoning the support that was being provided by her new boyfriend. In a subsequent hearing, the chancellor found that the former wife was still being supported by her boyfriend and alimony was therefore not justified. The only issue on appeal is whether alimony should have been awarded. We uphold its denial.
¶ 2. Floyd Lee Tarver and Alyison Ann Tarver, now using her maiden name of Alyison Alexis, were married in 1998. On March 5, 2003, the parties were granted a divorce on the grounds of irreconcilable differences. At the time of the divorce, Alexis was living with her boyfriend, Bo Barnes. She has one daughter, not of her marriage with Tarver, who lives with her.
¶ 3. The final decree of divorce included a provision that Alexis could receive $500 per month for thirty months in rehabilitative alimony. In order to receive that support, however, she had to establish her own residence, "meaning to withdraw herself from her current living arrangement with [Barnes]." This ruling was based on the general principle that alimony is to continue until the recipient either remarries or establishes an equivalent relationship with someone without the benefit of a marriage. The alimony was further based on Alexis' representation that she would obtain a high school equivalency degree and enroll in community college. This would ultimately make her more readily employable. The final decree also divided the marital property and debts in what the chancellor determined to be a fair and equitable manner.
¶ 4. On March 14, 2003, Alexis filed a notice with the court electing to receive the rehabilitative alimony. Floyd Lee Tarver then filed an objection. He claimed that she had not met the conditions placed on her in order to receive the alimony. He maintained that Alexis continued to live with Barnes. At the time of the final decree of divorce, Alexis lived in Barnes' home. After the divorce, she moved to a mobile home adjacent to Barnes' house. Tarver requested that Alexis provide receipts and other proof *1080 that she, not Barnes, was responsible for rent and such needs as food, gas, and automobile expenses. The evidence that was provided will be discussed below.
¶ 5. After a hearing, the chancellor found that Alexis' boyfriend was supporting her and therefore she was not entitled to have her former husband also provide support.

DISCUSSION

1. "Clean hands" doctrine
¶ 6. Alexis contends that Tarver is precluded from objecting to the rehabilitative alimony he was to pay because he does not come to court with "clean hands." She argues that Tarver was living with a woman at the time of the divorce and he was supporting the majority of this woman's financial needs. She further argues that Tarver did not make any of the rehabilitative alimony payments until the morning of the hearing. The chancellor found the argument meritless. The sole relevance of Alexis' relationship with someone else was whether she was receiving support from her new boyfriend. Had it been Alexis who had been ordered to support Tarver, then the former husband's similar conduct and potential support from a new girlfriend would have been relevant.

2. Rehabilitative alimony
¶ 7. The primary purpose of rehabilitative alimony is to give the former spouse the opportunity to enter the work force. Hubbard v. Hubbard, 656 So.2d 124, 129 (Miss.1995). In the final decree of divorce, the chancellor stated that the rehabilitative alimony that he was considering would allow Alexis to become self supporting without becoming destitute in the process. This type of alimony is similar to periodic alimony and may be modified in the event there is a change in circumstances. Id.; Deborah H. Bell, Alimony-Rehabilitative, 4 ENCY. OF MISS. LAW § 28:53 (Jeffrey Jackson & Mary Miller eds.2001).
¶ 8. Cohabitation with the new partner's providing support has been found to be a sufficient change in circumstances to terminate the receipt of alimony payments. Hammonds v. Hammonds, 641 So.2d 1211, 1217 (Miss.1994). The recipient of the alimony must establish that there is no mutual support. Scharwath v. Scharwath, 702 So.2d 1210, 1211 (Miss. 1997). If the absence of support is shown, then there is the possibility that there has been no change in circumstances that would allow the alimony payments to subside.
¶ 9. The chancellor ordered Alexis to modify her living arrangement in order to receive the rehabilitative alimony. As just described, alimony is usually awarded with the express or implicit qualification that it will be terminated if the recipient remarries or becomes supported in a manner equivalent to a marriage. In the present case, the chancellor concluded that an equivalent relationship already existed and needed to be abandoned. Else, no need for alimony would exist.
¶ 10. A chancellor is given wide discretion in determining alimony. "The court may, in its discretion, having regard to the parties and the nature of the case, as may seem equitable and just, make all orders... touching the alimony of the wife." Miss.Code Ann. § 93-5-23 (Supp.2003). When the chancellor was not presented with the usual circumstances, he was justified in adopting somewhat unusual but practical and reasonable means to address them.
¶ 11. Leaving the legal issue, we now examine the factual dispute. Alexis argues that she is no longer cohabiting with *1081 Barnes. She has moved into a mobile home on Barnes' property that is adjacent to his house. She alleges that she is to pay him rent of $400 a month, including utilities. Alexis stated during the hearing that she paid two months' rent after she received two months of alimony payments from Tarver. She contends that she does not have the means to move anywhere else and that Barnes is the only landlord that would allow her to continue living in the home in the event she is unable to pay rent. As proof that Alexis has moved into her own residence, she produced a cable television bill, a package label, a hospital bill, and an ambulance bill addressed to her at the mobile home address.
¶ 12. Alexis' boyfriend, Barnes, is her alleged employer, and she works cleaning construction sites. That income is irregular because projects are delayed due to weather.
¶ 13. These are the findings of the chancellor on the question on the support that the boyfriend Bo Barnes was making to Alexis:
[Alexis] admits that since the time of the divorce and more importantly, since the time of her "election [to receive alimony]" she has used Bo's car almost exclusively; she has continued to maintain a substantial portion of her personal property in Bo's home; he has provided meals for her and she for him on a regular basis; she has washed Bo's clothes, cooked much of his food, cleaned his house, slept with him most of the time, had sex with him, and freely gone from her house to his and he from his house to hers. She stated that her relationship may be like a marriage but she was not ready to make that commitment.
¶ 14. The chancellor concluded that Alexis "continues to be substantially dependent" upon her boyfriend, both financially and otherwise. The court also found that Alexis had not shown that she was a legitimate employee of the boyfriend's business, as the business did not record her as an employee in any way. Any money she received from the boyfriend, therefore, was not reasonably shown to be wages for work in his business.
¶ 15. At the time of the divorce, the chancellor acknowledged Alexis' financial situation was "meager or worse." He further stated that "the difficult financial circumstances that [Alexis] found herself in essentially forced her in the position of being financially vulnerable and because of such found herself having to take what she could in regard to potential living arrangements for her and her daughter." Thus, the chancellor was well aware of Alexis' financial straits.
¶ 16. With this awareness, he still expected that after the divorce decree that Alexis would "withdraw herself from her current living arrangements with [Barnes]." If she did not do so, the chancellor found that "the need for temporary rehabilitative alimony does not exist because she receives many of those things that she would otherwise need from [Barnes] and therefore is not entitled to such alimony."
¶ 17. Alexis maintains that she did exactly what the chancellor stated, she maintained her own residence. After the hearing, the chancellor concluded Alexis had not established a separate residence and continued to be supported by Barnes. She admitted that she used Barnes' automobile; she kept her personal belongings at his home; they provided meals for each other; she washed his clothes, cleaned his house, cooked his meals; they spent most nights together and had an intimate relationship; and they freely came and went to each other's homes.
*1082 ¶ 18. Under Scharwath, it is Alexis' responsibility to establish that she and Barnes were not mutually supportive of each other. Scharwath, 702 So.2d at 1211. The chancellor concluded that she was still receiving substantial financial support from Barnes. The fact that Alexis moved from a larger house to a smaller trailer located on the same property was not enough to demonstrate that she had in fact established a separate residence. What she admitted in the hearing supports this contention. Alexis could allow her rent to lapse and suffer no adverse consequences.
¶ 19. Therefore, it was not an abuse of discretion for the chancellor to find that Alexis was not entitled to rehabilitative alimony. We affirm.
¶ 20. THE JUDGMENT OF THE CHANCERY COURT OF WALTHALL COUNTY IS AFFIRMED. ALL COSTS ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES, P.J., LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.