CARLTON, J.,
 

 for the Court.
 

 ¶ 1. Janie and Billy McCarrell divorced after a twelve-year marriage. The chancellor ordered Billy to pay Janie $1,800 per month in rehabilitative alimony and Janie’s attorneys’ fees which totaled $15,803. Billy appeals these decisions. We find no error and affirm the chancellor.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. Janie and Billy married on June 30, 1995. In November 1996, Janie gave birth to their only child, Billy James. Billy filed for divorce on August 2, 2006. Both parties pled irreconcilable differences as the ground for divorce. The parties entered into an agreed order of divorce and a property settlement. The chancellor granted Janie physical custody of Billy James and ordered Billy to pay $800 per month in child support.
 

 ¶ 3. The chancellor issued a written opinion that the chancery clerk entered on December 20, 2007. In this opinion, the chancellor ordered Billy to pay Janie $1,800 per month for five years as rehabilitative alimony with the first payment due on January 5, 2008. The chancellor also issued a final decree of divorce that the chancery clerk entered on January 18, 2008.
 

 ¶ 4. Billy appeals, alleging that the chancellor: (1) abused her discretion when she awarded Janie rehabilitative alimony in the amount of $1,800 per month for five years; (2) erred when she ordered Billy to make his first alimony payment on January 5, 2008, when the clerk did not enter the final
 
 *170
 
 decree of divorce until January 18, 2008; and (3) abused her discretion when she ordered Billy to pay Janie’s attorneys’ fees in the amount of $15,803. Finding no error, we affirm the chancellor’s judgment.
 

 STANDARD OF REVIEW
 

 ¶ 5. “This Court will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied.”
 
 R.K. v. J.K.,
 
 946 So.2d 764, 772(¶ 17) (Miss.2007). Additionally, we have found that “[wjhenever a chancellor’s decision is based on credible evidence, this Court will affirm that decision.”
 
 C.A.M.F. v.
 
 972 So.2d 656, 666-67(¶44) (Miss.Ct.App.2007) (citations omitted). “Or differently stated, this Court may reverse a chancellor’s findings of fact only when there is ‘no substantial evidence in the record’ justifying his findings.”
 
 Id.
 
 at 667(¶ 44) (citations omitted).
 

 I. REHABILITATIVE ALIMONY
 

 A. Award of Rehabilitative Alimony
 

 ¶ 6. At the conclusion of the chancellor’s detailed analysis of the
 
 Armstrong
 

 [1]
 

 factors, the chancellor stated the following:
 

 In light of the factors outlined above, [Janie] is entitled to periodic alimony. Yet she has not asked the Court for periodic alimony, but for rehabilitative alimony for a period of time to allow her to get her education and become self-supporting. [Janie’s] demand for rehabilitative alimony is designed to allow her to attain that goal.
 

 The chancellor then awarded Janie rehabilitative alimony for a period of five years, beginning on January 5, 2008, to be paid in the monthly sum of $1,800.
 

 ¶ 7. Billy argues that the record fails to support the chancellor’s award of rehabilitative alimony, and he urges this Court to reverse and render that portion of the chancellor’s order. In turn, Janie contends that the chancellor did not abuse her discretion in granting her the award of rehabilitative alimony.
 

 ¶ 8. “Rehabilitative alimony provides for a party who is trying to become self-supporting and prevents that party from becoming destitute while searching for a means of income.”
 
 Voda v. Voda,
 
 731 So.2d 1152, 1155(¶8) (Miss.1999). Moreover, “[t]he primary purpose of rehabilitative alimony is to give the former spouse the opportunity to enter the work force.”
 
 Alexis v. Tarver,
 
 879 So.2d 1078, 1080(¶ 7) (Miss.Ct.App.2004).
 

 ¶ 9. In her opinion, the chancellor provided the following findings (among others not listed) under the
 
 Armstrong
 
 factors when she granted Janie rehabilitative alimony: (1) Billy earned $92,000 in income for 2006, and Billy’s projected income for 2007 amounted to $109,000; (2) in contrast, Janie presently earned $11.77 per hour on a part-time basis at her job at FedEx; (3) Billy had significant earning capacity, while Janie’s earning capacity was expected to increase greatly if she obtained an associate’s or bachelor’s degree; (4) Janie planned to attend college part time and to work full time; (5) Janie testified that she could complete her associate’s degree in four years, but in order to attend college, she required financial assistance from Billy to meet her monthly expenses; (6) Janie had full custody of Billy James; (7) Billy wastefully dissipated the largest asset of the marriage, the $55,000 of equity in the family home, when he “had sufficient funds” to stop the foreclosure of the home, but he did not do so; (8) Billy wastefully dissipated over $15,000 in certificates of
 
 *171
 
 deposit, which the chancellor found “were clearly established as marital property”; (9) Billy received a “disproportionately larger distribution of marital assets” than Janie; (10) Billy left the marriage with $720 in marital debt, while Janie assumed $4,566 in marital debt, $1,000 in medical bills, and $1,200 in debt to her mother for Janie’s attorneys’ fees; (11) Janie paid monthly rent in the amount of $800, along with utilities, lawn maintenance, groceries, gasoline, and other expenses; and (12) both parties agreed that Janie did not currently have the education and skills that would allow her to make a good living.
 

 ¶ 10. Based on the above findings of the chancellor, we find the chancellor did not err in awarding Janie rehabilitative alimony in the monthly amount of $1,800 as it serves the purpose of helping Janie become self-supporting and prevents her from becoming destitute while doing so.
 
 See Voda,
 
 731 So.2d at 1155(¶8). This issue lacks merit.
 

 B. Effective Date of Janie’s Rehabilitative Alimony Award
 

 ¶ 11. Billy contends that his alimony payments did not become effective until the chancery clerk filed the final decree of divorce on January 18, 2008. Billy’s assertion fails to consider that the clerk filed the chancellor’s opinion containing the order on December 20, 2007. Billy does not assert lack of knowledge of the December 20, 2007, entry. Janie submits that in the chancellor’s December 20, 2007, written opinion, the chancellor ordered Billy to pay rehabilitative alimony beginning on January 5, 2008. Therefore, Janie contends that Billy should have complied with the chancellor’s order by making his first payment by January 5, 2008.
 

 ¶ 12. Billy contends that he only had to comply with the final decree and not with the chancellor’s December 20, 2007, order that is set forth in the opinion of the court. However, our jurisprudence recognizes that the chancellor possesses the statutory authority to order temporary alimony and make proper orders and judgments thereon. Miss.Code Ann. § 93-5-17(2) (Miss. 2004). Moreover, courts are always deemed open for purposes of making and directing all interlocutory motions, orders, and rules.
 
 See also
 
 M.R.C.P. 77(a).
 

 ¶ 13. In
 
 McCardle v. McCardle,
 
 862 So.2d 1290, 1292(¶ 9) (Miss.Ct.App.2004), this Court recognized that “[a]ll orders, judgments and decrees commanding the payment of alimony, attorney’s fees and expenses of litigation, temporary alimony, child support payments, as well as orders including child custody and visitation rights may all be enforced by an action for contempt against the offending party.” A review of the record in this case reflects that on December 20, 2007, the chancellor provided a detailed memorandum opinion of the court setting forth the court’s findings, conclusions, and application of the law. In her written opinion, the chancellor awarded Janie rehabilitative alimony in the amount of $1,800 per month, beginning on January 5, 2008, and continuing monthly for five years. The chancery clerk filed the chancellor’s written memorandum opinion on December 20, 2007. The clerk then filed the chancellor’s final decree of divorce on January 18, 2008. The final decree of divorce incorporated both the property settlement and the chancellor’s previous December 20, 2007, written memorandum opinion containing the order to pay rehabilitative alimony due on January 5, 2008.
 

 ¶ 14. Certainly, the chancellor possesses the authority to order temporary alimony and make all proper orders and judgments thereon. Miss.Code Ann. § 93-5-17(2); M.R.C.P. 77(a);
 
 see also Langdon v. Langdon,
 
 854 So.2d 485,
 
 *172
 
 496(¶ 44) (Miss.Ct.App.2003). The duty to pay temporary support terminates upon entry of the final judgment of divorce, but the judgment does not eliminate the obligation to pay temporary alimony arrearag-es which accrued before the entry of the final decree.
 
 Prescott v. Prescott,
 
 736 So.2d 409, 416(¶ 35) (Miss.Ct.App.1999) (citing
 
 Lewis v. Lewis,
 
 586 So.2d 740, 741 (Miss.1991)). Stated differently, a temporary order is not a final order; however, arrearages accrue on unpaid temporary support payments.
 
 Id.
 
 Further, temporary support orders are enforceable through contempt actions.
 
 McCardle,
 
 862 So.2d at 1292(¶ 9);
 
 see also
 
 Bell on Mississippi Family Law § 9.01[5][c], at 236 (2005).
 

 ¶ 15. Here, the chancellor issued a written memorandum opinion that was entered on December 20, 2007, containing the order to pay the rehabilitative alimony beginning on January 5, 2008. Billy correctly asserts that he was required to comply with the final decree; however, he was also required to comply with previous orders of the court made prior to the final decree. We note that Billy raised this issue before the chancellor on his motion for reconsideration of final decree, and the chancellor denied the motion. We find that this issue lacks merit.
 
 See
 
 M.R.C.P. 77(a).
 

 II. Attorneys’ Fees
 

 ¶ 16. Taking into consideration governing case law and, specifically, the guidelines set forth by the supreme court in
 
 McKee v. McKee,
 
 418 So.2d 764, 767 (Miss.1982), the chancellor awarded Janie $15,803 in attorneys’ fees. Billy argues that the chancellor erred in awarding Janie attorneys’ fees because Janie failed to prove that she could not pay her attorneys’ fees and because the chancery court never actually cited him for contempt. Billy further states that Janie’s award of $15,000 in equitable division of the marital property evidences that Janie has the financial ability to pay her own attorneys’ fees.
 

 ¶ 17. However, we note that Billy did not preserve this issue for appeal. At the hearing, Billy neither objected to the introduction of evidence as to an award of attorneys’ fees, nor did he object to the manner in which the chancellor was asked to apply the
 
 McKee
 
 factors. Billy only objected to Janie testifying as to whether she believed that her attorneys’ fees constituted a fair and reasonable rate. In response, the chancellor sustained the objection and allowed Janie to testify as to her lay opinion, but not as an expert witness. When Janie then introduced an itemized statement of her attorneys’ fees, Billy failed to object.
 

 ¶ 18. The procedural bar notwithstanding, our jurisprudence generally provides that “[a]n award of attorney’s fees is appropriate in a divorce case where the requesting party establishes an inability to pay.”
 
 Gray v. Gray,
 
 745 So.2d 234, 239(¶ 26) (Miss.1999) (citations omitted). Conversely, if “a party is financially able to pay her attorney, an award of attorney’s fees is not appropriate.”
 
 Young v. Young,
 
 796 So.2d 264, 268-69(¶ 11) (Miss.Ct.App.2001) (quoting
 
 Martin v. Martin,
 
 566 So.2d 704, 707 (Miss.1990)). As the issue of whether to award attorneys’ fees in a divorce case constitutes a discretionary matter left to the chancellor, this Court is “reluctant to disturb” such a finding.
 
 Id.
 
 at 268(¶ 11).
 

 ¶ 19. Additionally, a chancellor may also award attorneys’ fees based on a party’s wrongful conduct as stated in
 
 Chesney v. Chesney,
 
 849 So.2d 860, 863(¶ 12) (Miss.2002) as follows:
 

 There have been a number of prior decisions upholding the award of attorney’s fees to one party where the other party
 
 *173
 
 has been found to be in contempt of court or where that party’s actions caused additional legal fees to be incurred.
 
 See A & L, Inc. v. Grantham,
 
 747 So.2d 882, 844-45 (Miss.1999) (holding that awarding attorney’s fees under certain circumstances, regardless of the party’s ability to pay, is not a reward, but reimbursement for the extra legal costs incurred as a result of the opposing party’s actions);
 
 Douglas v. Douglas,
 
 766 So.2d 68, 71 (Miss.Ct.App.2000) (where a party who is entitled to the benefits of a previous judicial decree is forced to initiate further proceedings to gain compliance with the previous order of the court, an award of attorney’s fees is appropriate).
 

 ¶ 20. A review of the record in this case sheds light on the chancellor’s analysis. To guide courts in the manner in which they award attorneys’ fees, the
 
 McKee
 
 court stated the following:
 

 In determining an appropriate amount of attorney[s’] fees, a sum sufficient to secure one competent attorney is the criterion by which we are directed.
 
 Rees v. Rees,
 
 188 Miss. 256, 194 So. 750 (1940). The fee depends on consideration of, in addition to the relative financial ability of the parties, the skill and standing of the attorney employed, the nature of the case and novelty and difficulty of the questions at issue, as well as the degree of responsibility involved in the management of the cause, the time and labor required, the usual and customary charge in the community, and the preclusion of other employment by the attorney due to the acceptance of the case.
 

 McKee,
 
 418 So.2d at 767.
 

 ¶ 21. The chancellor explained why she awarded Janie $15,803 in attorneys’ fees in stating the following in her December 20, 2007, opinion:
 

 An itemized statement of attorney[s’] fees incurred by [Janie] was made an exhibit at the trial of this matter, which reveals that [Janie] has paid $4,500 towards her attorney[s’] fees that totaled over $11,500 prior to trial. Testimony and evidence adduced at trial reveals that [Janie], based on her expenses that exceed her part-time income, does not have the financial ability to pay her attorney[s’] fees, and that she in fact used temporary support payments to make a partial payment of fees incurred on her behalf. [Janie] does not have any further assets to pay her attorney[s’] fees. On the other hand, there is evidence that [Billy] made $92,000 in 2006. In September 2006, [Billy] cashed in certificates of deposit totaling over $15,000 without notifying [Janie] and without sharing any of the money with [Janie]. [Billy] purchased his own home in December 2006, and drives a 2006 Hummer, for which he pays $1,100 per month, and that [Billy] is projected to earn even more for 2007. A great financial disparity exists between the parties. [Billy] has the financial ability to pay [Janie’s] attorney’s fees. [Janie] is unable to pay.
 

 Additionally, the record reveals that [Billy] failed to comply with the [agreed order] on numerous occasions (he was delinquent in payment of his court-ordered temporary support to [Janie] at the trial of this matter, as acknowledged by [Billy] at trial). [Janie] was forced to incur insufficient fund charges due to [Billy’s] bad checks for temporary support. ... [Janie] was forced to file two separate [petitions for contempt] against [Billy]. [Billy] brought to one of the hearings on the [petition for contempt] four delinquent payments to avoid being held in contempt. One of the checks did not clear the bank due to insufficient
 
 *174
 
 funds. Further, the evidence shows that numerous hours and attorney[s’] fees were expended in an attempt to force [Billy] to comply with the [agreed order], in which he represented that he had brought the mortgage payments on the marital home current through September 2006. The evidence before this court is overwhelming that at the time of his representation to the [c]ourt the mortgage was delinquent, resulting in foreclosure of the home.... Meanwhile, during the entire tumultuous time that [Janie] was forced to incur significant attorney[s’] fees for [Billy’s] wrongful and contemptuous conduct, and which ultimately resulted in the marital home being foreclosed, [Billy] never missed a rent or house payment on his house in ... Hernando, Mississippi, never missed a Hummer payment, made a down payment on a hunting trip, and was shopping for dates on the Internet.
 

 ¶ 22. Additionally, in light of the
 
 McKee
 
 factors, the chancellor noted that Janie’s attorneys set forth an itemized statement that Janie presented at trial and entered into evidence without objection. The chancellor found that the work performed on her behalf by her attorneys and the fees charged “were fair and reasonably necessary, and such rates are in keeping with the usual and customary charges in the community.” The chancellor also stated that “[Janie] further testified that a large portion of the attorney[s’] fees she owes was incurred as a result of [Billy’s] wrongful conduct....”
 

 ¶ 23. As stated, Billy failed to object to the introduction of evidence as to the attorneys’ fees as well as to the manner in which the chancellor was asked to apply the
 
 McKee
 
 factors. However, a review of the record reflects that credible evidence supported the chancellor’s decision to award Janie $15,803 in attorneys’ fees. First, the chancellor pointed to ample evidence that Janie could not afford to pay her attorneys’ fees.
 
 See Gray,
 
 745 So.2d at 239(¶ 26). Second, the chancellor discussed how Janie incurred significant attorneys’ fees due to Billy’s wrongful and contemptuous conduct.
 
 See Chesney,
 
 849 So.2d at 863(¶ 12). Third, the chancellor deemed Janie’s legal fees as reasonable in light of her application of the
 
 McKee
 
 factors.
 
 See McKee,
 
 418 So.2d at 767.
 

 ¶ 24. As this Court has stated, “the chancellor’s goal is to achieve equity.”
 
 Humphries v. Humphries,
 
 904 So.2d 192, 199(¶ 24) (Miss.Ct.App.2005). With the goal of equity in mind, we find that the chancellor in this case did not abuse her discretion when she awarded Janie $15,803 in attorneys’ fees. Again, procedural bar notwithstanding, we find no merit in this issue.
 

 ¶ 25. THE JUDGMENT OF THE DE-SOTO COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, ISHEE, ROBERTS AND MAXWELL, JJ„ CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT.
 

 [1]
 

 .
 
 Armstrong v. Armstrong,
 
 618 So.2d 1278, 1280 (Miss.1993).