# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-00936-COA

**AMANDA WEBB PRESTWOOD**                                    **APPELLANT**

**v.**

**GENTRY HEATH PRESTWOOD**                                    **APPELLEE**

DATE OF JUDGMENT:             05/24/2018
TRIAL JUDGE:                  HON. JOHN C. McLAURIN JR.
COURT FROM WHICH APPEALED:    RANKIN COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:       CHRISTOPHER A. TABB
ATTORNEYS FOR APPELLEE:       JEREMY PAUL MCNINCH
                              ANN REGAN BILBO BARLOW
NATURE OF THE CASE:           CIVIL - DOMESTIC RELATIONS
DISPOSITION:                  AFFIRMED - 12/10/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE J. WILSON, P.J., McDONALD AND McCARTY, JJ.**

**McDONALD, J., FOR THE COURT:**

¶1.     On May 24, 2018, the Rankin County Chancery Court entered a final judgment of divorce on the ground of irreconcilable differences. The only issue submitted to the chancellor for decision was alimony. The chancellor awarded Amanda Webb Prestwood rehabilitative alimony from Gentry Heath Prestwood for a period of five years in the amount of $1,500 per month. Thereafter, Amanda filed a post-trial motion and requested that the court reconsider the evidence at trial along with post-trial evidence. In the motion, she requested lump-sum alimony in the amount of $300,000 payable by Gentry at the rate of $2,500 per month for a ten-year period. The court denied her motion, and she now appeals.

Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. Amanda and Gentry were married on May 13, 2003. Three children were born of the marriage.[1] The parties separated on February 6, 2017. On May 9, 2017, Gentry filed his complaint for divorce and other relief on the basis of irreconcilable differences. On May 12, 2017, Amanda answered with certain denials and affirmative defenses. She also filed a counterclaim for separate maintenance, custody, and support and requested temporary relief in the event that Gentry's request for a divorce was granted. On May 18, 2017, Gentry filed a motion for temporary relief, but he did not file a reply to Amanda's counterclaim for separate maintenance.[2]

¶3. On November 8, 2017, the court held a hearing for a temporary relief. Gentry asked the court for joint legal custody of the children and for the court to split the cost of the children's extracurricular activities. Amanda asked the court to require Gentry to pay her $1,400 for rent. She also requested that Gentry not have any overnight visitation and that any visitation be supervised.

¶4. At the hearing, Gentry testified that he was employed as a store manager at D. Noblin Furniture and that Amanda had worked as a teacher approximately eleven of the fifteen years they were married. Amanda testified that she was unemployed at the time of the hearing.

---

[1] The minor children consist of E.K.P., a female child, born in 2007; L.S.P., a male child, born in 2012; and H.S.P., a female child, born in 2014.

[2] Thereafter, the parties filed several amended complaints alleging fault grounds for the divorce.

Both Gentry and Amanda testified that she was supposed to become employed in August 2017, which was prior to the date of the hearing.

¶5.    On May 9, 2018, Gentry and Amanda filed a joint motion to withdraw fault grounds and entered into a stipulation agreement as to all of the disputed issues except the amount of alimony, which they submitted to the chancellor for resolution. They agreed to joint legal custody of the minor children, with Amanda having sole physical custody subject to Gentry's customary visitation rights set out in the agreement. Gentry agreed to pay $1,800 per month for child support. Gentry agreed to cover the minor children on his health insurance policy through August 31, 2018. Thereafter, Amanda was to assume the responsibility for health insurance to which Gentry would contribute $300 per month and pay half of any deductibles, co-pays, et cetera. The parties agreed to divide the fees for the minor children's counseling.

¶6.    Further, the agreement stated that prior to the divorce becoming final, the parties would sell the marital domicile and equally divide the proceeds. After the sale, each party's share was $4,521. In addition, on the day of closing, Gentry gave Amanda a check for $6,500, which was a little over half of their savings in an account at Rivertrust Credit Union. Gentry agreed to pay Amanda an additional $30,000 for property division within sixty days after the entry of a final judgment of divorce and to transfer to her $49,000 from his retirement account(s).[3] The parties agreed that Amanda would keep her public-employee retirement account, containing $32,000, that she accumulated from working as a teacher over

---

[3] Based upon Gentry's financial statement and disclosure submitted pursuant to Uniform Chancery Court Rule 8.05, the $49,000 he agreed to give Amanda from his retirement account amounted to 38.6% of the total value of his retirement accounts.

the years.

¶7.     The parties agreed also to provide insurance on their respective lives until the minor children reach the age of twenty-one or are otherwise emancipated with periodic proof that the insurance was being maintained. The parties divided the automobiles. The parties agreed to alternate the state and federal tax exemptions of the minor children.

¶8.     After Amanda and Gentry entered into the stipulation agreement, they consented in writing to the entry of a divorce based upon the ground of irreconcilable differences, which resolved all issues except alimony. A hearing on that issue was held on May 9, 2018. On May 24, 2018, the court entered a final judgment of divorce for irreconcilable differences and awarded Amanda rehabilitative alimony for a period of five years in the amount of $1,500 per month.

¶9.     On May 31, 2018, Amanda filed a motion that the court receive additional evidence and alter or amend judgment, or, in the alternative, grant a new trial on the issue of alimony. Amanda requested the court to reconsider the evidence at trial along with the additional evidence attached[4] and award her lump-sum alimony in the amount of $300,000 payable by Gentry at the rate of $2,500 per month for a ten-year period. The court denied the motion on June 12, 2018, and Amanda filed her notice of appeal on June 25, 2018.

## STANDARD OF REVIEW

¶10.    "We afford chancellors much discretion in our review of domestic-relations cases.

---

[4] Amanda attached a daycare cost sheet, a lease agreement between her and her father, a promissory note reflecting the amount of money owed to her father, credit card statements, and her student loans debt.

This Court will not disturb a chancellor's findings unless they are manifestly wrong or clearly erroneous, or the chancellor applied an erroneous legal standard." *Bell v. Stevenson*, 158 So. 3d 1229, 1233 (¶6) (Miss. Ct. App. 2015). "This Court will not reverse a chancery court's factual findings . . . where there is substantial evidence in the record supporting them." *Sheridan v. Cassidy*, 273 So. 3d 783, 786 (¶9) (Miss. Ct. App. 2018).

## DISCUSSION

¶11. The chancellor awarded Amanda rehabilitative alimony for a period of five years in the amount of $1,500 per month. Amanda argues that the chancellor incorrectly applied the *Armstrong* factors when considering whether she should receive alimony and how much alimony she should receive. We disagree and affirm the chancery court's decision.

¶12. In *Armstrong v. Armstrong*, 618 So. 2d 1278, 1280 (Miss. 1993), the supreme court held "[i]n the case of a claimed inadequacy or outright denial of alimony, we will interfere only where the decision is seen as so oppressive, unjust or grossly inadequate as to evidence an abuse of discretion." The factors used to determine whether a spouse is entitled to alimony are as follows:

> (1) the income and expenses of the parties;
> (2) the health and earning capacities of the parties;
> (3) the needs of each party;
> (4) the obligations and assets of each party;
> (5) the length of the marriage;
> (6) the presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care;
> (7) the age of the parties;
> (8) the standard of living of the parties, both during the marriage and at the time of the support determination;
> (9) the tax consequences of the spousal order;
> (10) fault or misconduct;

5

(11) wasteful dissipation of assets by either party; and
(12) any other factor deemed by the court to be just and equitable in connection with the spousal support.

*Id*.

¶13. "[A]limony is considered only if after equitable division, one party is left with a deficit." *Culumber v. Culumber*, 261 So. 3d 1142, 1151 (¶29) (Miss. Ct. App. 2018). "Mississippi law recognizes four types of alimony: periodic, lump-sum, rehabilitative, and reimbursement." *Stroh v. Stroh*, 221 So. 3d 399, 412 (¶44) (Miss. Ct. App. 2017). "We recognize that 'rehabilitative alimony provides for a party who is trying to become self-supporting and prevents that party from becoming destitute while searching for a means of income. Moreover, the primary purpose of rehabilitative alimony is to give the former spouse the opportunity to enter the work force.'" *Dauenhauer v. Dauenhauer*, 271 So. 3d 589, 594 (¶18) (Miss. Ct. App. 2018) (quoting *Branch v. Branch* 174 So. 3d 932, 944-45 (¶50) (Miss. Ct. App. 2015)).

¶14. Recently, in *Dauenhauer*, this Court upheld a chancellor's award of rehabilitative alimony to a husband in the amount of $2,000 per month for forty-eight months where the wife was a nurse practitioner earning an annual salary of $106,435, and the husband was a school-bus driver earning between $17,542 and $25,146 per year. *Id.* at 594-95 (¶¶19-20), 597 (¶31). The chancellor considered the fact that the husband possessed a bachelor's degree in professional aeronautics but that he would have to go back to school to become certified to teach. *Id*. at 595 (¶21). Additionally, the chancellor noted that the award was "to assist him to transition to financial independence as a school teacher or in another occupation," and

it was "intended to allow him to become self-supporting without becoming destitute in the interim." *Id*. at 596 (¶24) (ellipsis and internal quotation mark omitted).

¶15.    Also, in *Branch v. Branch*, 174 So. 3d 932, 945 (¶52) (Miss. Ct. App. 2015), this Court affirmed a chancellor's award of rehabilitative alimony to a spouse in the amount of $1,000 per month for seventy-two months where "the chancellor specifically intended the alimony award to support [the spouse] until she found sustainable employment and became self-sufficient." Very similarly, in *McCarrell v. McCarrell*, 19 So. 3d 168, 170 (¶¶9-10) (Miss. Ct. App. 2009), we found no error in the chancellor's award of rehabilitative alimony in the amount of $1,800 for a period of five years where the husband's projected income amounted to $109,000 and the spouse was earning $11.77 per hour on a part-time basis. The chancery court noted that the husband had a significant earning capacity, and the spouse's earning capacity was expected to increase greatly if she obtained an associate's or bachelor's degree (which she planned to do). *Id.* at 170 (¶9). Therefore, the chancellor found that rehabilitative alimony "serves the purpose of helping [the spouse] become self-supporting and prevents her from becoming destitute while doing so." *Id.* at 171 (¶10).

¶16.    Here, the chancellor made an on-the-record finding on all of the *Armstrong* factors. With respect to the income and expenses of the parties, the chancellor stated that Gentry had approximately $8,000 in monthly disposable income from his job, and although Amanda was unemployed, when she went back to work as a teacher, it was expected that she could earn an income of at least $2,000 per month. Further, the chancellor acknowledged that Gentry was paying $2,100 in child support and health insurance contributions for the children. The

7

chancellor concluded that this brought Amanda's disposable income to $4,100 per month and Gentry's disposable income to $5,900 per month. As for expenses, the chancellor stated that Amanda's Rule 8.05[5] disclosure was "not in touch with reality" and "greatly inflated."[6] The chancellor noted that Amanda had a place of her own, although owned by her parents, but Gentry would eventually have to purchase a home which would be an extra expense for him. The chancellor considered both parties to be in relatively good health with an earning capacity. Although Amanda was unemployed, the chancellor mentioned that she could make a decent income as a school teacher, which she had done ten out of the fifteen years the parties were married.[7]

¶17. As for obligations and assets, the chancellor noted that Amanda claimed that she owed debts totaling $79,000, but she failed to state to whom the debts were owed and offered no additional testimony pertaining to that debt.[8] The chancellor considered that the parties sold

---

[5] UCCR 8.05.

[6] For example, the chancellor noted that Amanda's Rule 8.05 disclosure indicated that she was paying $1,700 per month for food and household expenses; $580 per month for childcare (although she is at home with the children); $201 per month for a maid, which the court considered a luxury; and $1,400 per month for rent, but she was living at her parents' home and provided no testimony that she had to pay rent. In Amanda's post-trial motion, she attached her credit card statements, which reflected her expenses; she attached a rental agreement between her and her father, and she attached a daycare cost sheet.

[7] At the temporary hearing, Gentry testified that Amanda probably worked eleven years of their fifteen-year marriage.

[8] In Amanda's post-trial motion, she also attached a promissory note, which stated that she would pay her father $43,000 for a loan he provided to her. It does not state the monthly payments required, but she was to begin payments on June 1, 2018. The promissory note was not dated, and the section containing the certificate of acknowledgment by a notary public was left blank.

their home prior to the divorce, and each received $4,521. The parties evenly divided the money that was in their savings account, and Amanda received $6,500. Also, the chancellor considered that within sixty days of the final judgment, Amanda was going to receive a lump-sum payment of $30,000 for property division that would not be burdened with any tax liability. Additionally, Amanda was going to receive $49,000 from Gentry's retirement account(s), while she would retain the entire $32,000 in her retirement account. The chancellor therefore concluded that it could not be said that she would be left a destitute or without assets because "she's basically getting everything they've got."[9]

¶18. Further, the chancellor held that the length of the marriage was sufficient to allow an award. But the chancellor found the presence of minors in the home, which requires the child-care factor, to be inapplicable because neither party presented evidence of daycare expenses. The chancellor stated that "the standard of living would be more able to be upheld by her than him because she's getting . . . virtually all of the parties' assets."[10] The

---

[9] After totaling the figures discussed above, as a result of the divorce, Amanda was to receive $90,021 from Gentry. That figure does not include the $2,100 per month that she would receive from Gentry as child support. That figure also does not include the $32,000 that she would keep from her retirement account.

[10] The chancellor stated that there was no testimony introduced about potential tax consequences of the alimony of the spousal support order. But the court noted that "the new Trump tax act that was passed reversed the prior requirements that the payor be entitled to deduct the alimony and the payee be required to claim it as taxable income." Therefore, "[Gentry] would pay taxes on the alimony that he gives [Amanda], and she would not be required to pay taxes on any periodic alimony." The chancellor was mistaken in this regard because the relevant amendments to the Internal Revenue Code do not apply to divorce decrees entered prior to January 1, 2019. *See* Tax Cuts & Jobs Act, Pub. L. No. 115-97, § 11051, 131 Stat. 2054, 2090 (2017). However, there is no evidence in the record that Amanda will owe any significant taxes on the alimony or that the chancellor's mistake had any impact on the award.

chancellor stated that it was undisputed that Gentry was guilty of "uncondoned adultery" during the marriage. But the chancellor stated that Amanda was not "without fault for their problems." The court stated that because this was not a fault-based divorce, it was not the sole determining factor as to whether or not alimony should be awarded. Ultimately, the chancellor held that "the main reason that this court believes that a certain amount of alimony should be awarded is basically because of the disparity in the incomes of these parties." Thereafter, the chancellor awarded Amanda rehabilitative alimony for a period of five years in the amount of $1,500 per month. We find no abuse of discretion in the chancery court's ruling.

¶19.    This case is governed by our holdings in *Dauenhauer*, *Branch*, and *McCarrell*. The chancery court is not required to make both parties financially equal. As stated before, the purpose of rehabilitative alimony is to enable a spouse "to become self-supporting and prevents that party from becoming destitute while searching for a means of income." *Dauenhauer*, 271 So. 3d at 594 (¶18). The record provides, and the chancellor considered, the fact that Amanda possessed a bachelor's degree in elementary education and a license to teach. The chancellor noted that Amanda worked ten of the fifteen years of the marriage. Also, Amanda testified that she was supposed to start back working in August 2017 and that she had been seeking employment. The chancellor concluded that because Amanda had not started working and because of the $1,800 disparity in disposable monthly incomes between her and Gentry, she was entitled to rehabilitative alimony. "The question of rehabilitative alimony, including a determination of what is the proper period of transition, is a matter left

to the sound discretion of the chancellor." *Roberts v. Roberts*, 924 So. 2d 550, 554 (¶14) (Miss. Ct. App. 2005). "Unless the chancellor abuses that discretion, this Court is not at liberty to reverse his decision." *Id.* Thus, we find that the record provides substantial evidence to support the chancellor's award and that the chancellor did not abuse his discretion. Accordingly, we affirm.

¶20. **AFFIRMED.**

      **BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, TINDELL, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**